No. 93,131

In the Matter of REBECCA ARLENE WARE, *Respondent.*
112 P.3d 155

Opinion filed June 3, 2005.

*Frank D. Diehl,* deputy disciplinary administrator, argued the cause and was on the brief for petitioner.

*Stephen M. Joseph,* of Joseph & Hollander, P.A., of Wichita, argued the cause and was on the brief for respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Rebecca A. Ware, an attorney licensed to practice law in the state of Kansas since September 2000. Ware's last registration address with the Clerk of the Appellate Courts of Kansas is Wichita, although she now resides in Chicago, Illinois.

The hearing panel found that respondent violated Kansas Rules of Professional Conduct (KRPC) 1.3 (2004 Kan. Ct. R. Annot. 354) (diligence), 8.4(c) (2004 Kan. Ct. R. Annot. 485) (misconduct involving dishonesty, fraud, deceit, or misrepresentation), Supreme Court Rule 207(b) (2004 Kan. Ct. R. Annot. 261) (duty to assist investigation), and Supreme Court Rule 211(b) (2004 Kan. Ct. R. Annot. 275) (failure to timely file a written answer to amended complaint).

Three days prior to the hearing before the panel, respondent filed her written answer admitting all of the factual allegations of the amended formal complaint. These admissions were the result of an agreement between the parties that in exchange for the admissions and not objecting to the admission of petitioner's exhibits, the Disciplinary Administrator would recommend the discipline of published censure.

On an unopposed motion, granted by the panel, the respondent was permitted to be excused from attending the hearing. She sought to be excused for the reasons that she had moved to Chicago, Illinois, where she had obtained nonattorney employment

with a large insurance company. No witnesses were called at the hearing by either party. Respondent does not contest the hearing panel's findings of fact or conclusions of law.

## FACTUAL BACKGROUND

In summary, the hearing panel made the following findings of fact.

Respondent was hired by Sprint in August 2000 as an attorney in the labor and employment section of Sprint's law department. Respondent's job duties included responding to charges of discrimination against Sprint. On June 15, 2001, Deborah Simmons, a Sprint employee in Florida, filed a discrimination claim with the Florida Commission on Human Relations (FCHR). Respondent was assigned to handle the claim on behalf of Sprint.

Because Sprint declined FCHR's request to mediate the claim, Sprint was required to file a position statement with the FCHR by July 19, 2001. Respondent did not file a position statement by that date. About 1 month after the position statement was due, respondent sent the FCHR a letter stating she would file a position statement by September 7, 2001. However, respondent did not file a position statement by September 7, 2001.

Months passed and, on January 30, 2002, the FCHR sent a letter notifying respondent that Simmons had amended her claim to include an allegation of age discrimination and that a position statement was to be filed by March 4, 2002. Respondent did not provide a position statement by March 4, 2002, and on March 5, 2002, the FCHR sent a fax to respondent requesting she contact them about the position statement. On April 2, 2002, the FCHR left a voice mail message with respondent stating that it had not received a position statement. Respondent contacted the FCHR and requested an extension to April 16, 2002. However, respondent failed to provide a position statement by April 16, 2002.

On April 22, 2002, the FCHR faxed a letter to respondent requesting a position statement by May 4, 2002. The letter further informed respondent that the failure to provide a position statement could result in an adverse finding of reasonable cause against Sprint, pursuant to Florida Administrative Code, Rule 60Y-

5.003(4) (2004), which provides that an adverse inference of reasonable cause may be issued against a respondent if it has failed to provide the agency with requested information after having been provided reasonable notice and opportunity to cure.

Respondent did not provide a position statement by May 4, 2002. On May 6, 2002, respondent requested an extension to May 10, 2002. However, respondent did not provide a position statement by May 10, 2002. Consequently, in an internal agency document dated May 21, 2002, the FCHR recommended that a cause determination be made against Sprint for its failure to provide a position statement. On June 4, 2002, the FCHR adopted the recommendation and entered an adverse inference cause finding against Sprint based on the fact that Sprint had failed to provide information to the agency after reasonable notice and an opportunity to cure had been provided.

Sprint used a case tracking system to follow the matters assigned to the attorneys in the law department. The law department attorneys were required to record the status of each matter assigned by indicating on the report whether a matter is "active" or "pending." A matter is "active" if the company has not yet filed a position statement or responded to agency requests for information. A matter is "pending" when a position statement has been filed or a response to a request for information has been provided, and the company is waiting on correspondence from the agency.

In addition to tracking matters as active or pending on the reports, the attorneys were required to provide a brief narrative update on the reports showing the status of the matters they are handling. The case track reports were issued bi-weekly and were reviewed regularly by Jill Ferrel, Vice President of Labor and Employment, who was responsible for supervising the attorneys of the law department, including respondent.

Respondent falsely reported the status of the Simmons matter on Sprint's case tracking system throughout the course of her handling of the case. Shortly after having failed to provide a position statement by the September 7, 2001, due date, respondent changed the status of the Simmons matter from active to pending. Sometime between December 5, 2001, and January 16, 2002, re-

spondent had her secretary change the narrative section of the case track report to show that a position statement had been provided, despite the fact that she still had not sent a position statement to the FCHR. On or about May 13, 2002, respondent directed her secretary to show that information had been provided to the FCHR in response to their request. And lastly, while notice of the FCHR's adverse determination was provided to respondent, she did not record this fact in Sprint's case tracking system.

Simmons filed suit against Sprint on July 18, 2002, and the Sprint attorney assigned to handle the litigation contacted respondent and requested that she forward the Simmons file. On July 22, 2002, respondent replied that she would send it. When it was not received by July 31, 2002, respondent claimed to have sent it by regular mail on Monday July 29, 2002. However, the file was never received.

On August 4, 2002, Ferrel and others from Sprint confronted respondent about the Simmons case and accused her of falsely reporting the status on her case tracking reports. Respondent acknowledged that she had not filed a position statement, and therefore the case track reports were erroneous, but she blamed the errors on her secretary. However, unbeknownst to respondent, her secretary had been keeping respondent's handwritten directions concerning the case track reports because the secretary believed respondent was blaming her for mistakes that were not hers. When Sprint showed respondent these handwritten directives, she admitted they were written in her handwriting and admitted that she had directed the false changes in the case tracking reports.

Additionally, when Sprint was investigating respondent's handling of the Simmons matter, respondent's supervisor attempted to inspect respondent's assignment log. The assignment log was an additional case tracking system that respondent had maintained on her computer. However, respondent's supervisor was unable to access the log because it had been deleted from respondent's computer. When confronted with this, respondent told her supervisor she had no idea how the log was deleted. Sprint's information technology expert determined that respondent had deleted the assignment log from her computer.

Mark D. Hinderks, an attorney for Sprint, filed a written complaint against respondent. Kevin Moriarty was assigned to investigate the complaint.

Moriarty contacted respondent, and she acknowledged that she had received the complaint. Respondent subsequently notified Moriarty that she had filed a complaint against Sprint with the Equal Employment Opportunity Commission and requested an extension of time to respond in writing to the complaint herein.

In her written response to Moriarty, respondent contended the allegations in the complaint were false, blamed her secretary for the false entries in the case tracking reports, denied that she had received any warning from the FCHR that the failure to submit a position statement would result in an adverse finding of cause, and denied ever receiving any notice that the FCHR had, in fact, issued an adverse cause determination. In part, respondent stated:

"Quite simply, Sprint's allegations regarding my handling of the Deborah Simmons file are misleading, false, and in no way approach an ethical violation. . . .

". . . I never received any warning from the [FCHR] that failure to respond would result in an adverse inference of discrimination by Sprint as Sprint claims. Further, I never received a 'Notice of Determination: Cause' by the [FCHR] as Sprint claims.

. . . .

"On August 14, 2002, Ms. Crosswhite, Ms. Ferrel and Marvin Motley, Vice-President of Human Resources, contacted me to discuss my handling of the Simmons charge file. When Sprint accused me of falsely recording the status of the Simmons matter on my Case Track reports, I immediately stated that there must be some error because I had not filed a position statement in response to Ms. Simmons' complaint and it should be reflected as an Open matter. When Sprint accused me of falsely recording the status of the Simmons matter on my Case Track reports, I stated a plausible explanation was a data entry error by my secretary. (Footnote 3)

"Footnote 3: It is a sad but true fact known to my supervisors that I had an ongoing problem with my secretary's work at the time of the alleged entries: unfortunately, despite her efforts and mine to correct the problems-her work was routinely riddled with errors, missing or otherwise incorrect."

Respondent also asserted that Sprint's ethical complaint against her was in retaliation for an internal complaint of sexual harassment she had made against her supervisor in January of 2002.

Moriarty met with respondent and her counsel at the time, Ann Hoover. During the interview, respondent changed her explanation as to why the case track reports inaccurately reflected the status of the Simmons matter. She stated that there had been a change in the terminology of "pending" and "active," which had confused her. She told Moriarty that she never intended to mislead anyone, and the changes were simply an error resulting from her confusion.

## CONCLUSIONS OF LAW

The panel concluded that respondent violated KRPC 1.3, KRPC 8.4(c), Supreme Court Rule 207(b), and Supreme Court Rule 211(b). Specifically, the panel stated:

(1) Respondent failed to act with reasonable promptness and failed to provide diligent representation to Sprint in violation of KRPC 1.3, when she failed to defend the employment discrimination case;

(2) Respondent had engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of KRPC 8.4(c) when she falsified internal Sprint documents to make it appear as though she had taken action on the Simmons case when she had not;

(3) Respondent violated Kan. Sup. Ct. R. 207(b) by failing to cooperate in the disciplinary investigation when she wrote a false and misleading letter to Moriarty, in which she made repeated false accusations blaming her secretary for reporting errors when, instead, the respondent knowingly falsified internal Sprint documents to make it appear that she had done work assigned to her when, in fact, she had not; and

(4) the respondent violated Kan. Sup. Ct. R. 211(b) when she failed to timely file a written answer to the amended formal complaint.

It should be noted that the Disciplinary Administrator's office honored its agreement with respondent and recommended to the panel that discipline should be published censure and that respondent would take 2 years of voluntary inactive status.

## RECOMMENDATION

The panel then made its recommendation for discipline, as follows:

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to

be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated her duty to maintain personal integrity by failing to refrain from engaging in conduct that involves dishonesty, fraud, deceit, and misrepresentation.

"*Mental State.* The Respondent knowingly violated her duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual injury to Sprint.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"Dishonest or Selfish Motive. The Respondent falsified internal Sprint documents and led her client to believe that she was appropriately defending an employment discrimination case when, in fact, the Respondent failed to represent her client in the case. In addition, when confronted with her actions, the Respondent repeatedly and falsely attempted to shift the blame for her actions to her secretary, whom she accused of making 'mistakes,' when, in fact, the Respondent knew that she alone was responsible for the false reports submitted to her superiors. As such, the Hearing Panel concludes that the Respondent's misconduct was motivated by dishonesty and selfishness.

"A Pattern of Misconduct. The Respondent engaged in a pattern [of] misconduct when she repeatedly falsified internal Sprint documents. The Respondent's pattern of misconduct exacerbated Sprint's injury.

"Multiple Offenses. The Respondent violated KRPC 1.3, KRPC 8.4(c), Kan. Sup. Ct. R. 207(b), and Kan. Sup. Ct. R. 211(b). As such, the Respondent committed multiple offenses.

"Bad Faith Obstruction of the Disciplinary Proceeding by Intentionally Failing to Comply with Rules or Orders of the Disciplinary Process. By providing Judge Moriarty with a letter that contained false and misleading statements during the course of the Disciplinary Investigation, the Respondent engaged in a bad faith obstruction of the disciplinary process.

"Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process. The Respondent's response that she provided Judge Moriarty contained false and misleading statements. Accordingly, the Hearing Panel concludes that the Respondent engaged in a deceptive practice during the disciplinary process.

"Refusal to Acknowledge Wrongful Nature of Conduct. The Respondent failed to acknowledge any wrongdoing until three days prior to the hearing on the Formal Complaint. The Hearing Panel concludes that the Respondent refused to acknowledge the wrongful nature of her conduct until immediately before the hearing on the Formal Complaint.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"Absence of a Prior Disciplinary Record. The Respondent has not previously been disciplined.

"Inexperience in the Practice of Law. The Kansas Supreme Court admitted the Respondent to practice law in 2000. At the time the Respondent engaged in misconduct, the Respondent had been practicing law for a period of approximately 1 year. Accordingly, the Hearing Panel concludes that Respondent was inexperienced in the practice of law at the time she engaged in the misconduct.

"In addition to the above cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.'
Standard 4.62.

"Prior to the hearing on this matter, the Deputy Disciplinary Administrator and counsel for the Respondent reached an agreement. In return for the Respondent (1) stipulating to the facts contained in the Formal Complaint, (2) stipulating to the admission of the Disciplinary Administrator's exhibits, and (3) agreeing to take 'inactive' status in Kansas for a period of two years, the Deputy Disciplinary Administrator agreed to recommend that the appropriate discipline should be censure, to be published in the Kansas Reports. Based upon the agreement, the Respondent concurred with the recommendation regarding discipline.

"It is the opinion of the Hearing Panel that before the Respondent resumes the active practice of law, proper safeguards need to be in place to protect the public from the repeat of this misconduct. The Hearing Panel is concerned that the parties' plan does not contain any restrictions on the Respondent's ability to apply for [and] receive a license to practice law in another state, and thus fails to provide adequate safeguards.

"Based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of one year. Additionally, the Hearing Panel recommends that if the Respondent decides to seek reinstatement after the suspension, that the Respondent be required to undergo a hearing, pursuant to Kan. Sup. Ct. R. 219. The Hearing Panel strongly suggests that during the course of any investigation conducted pursuant to a request for reinstatement, that the Respondent be required to undergo a psychological evaluation to ensure that, if reinstatement is granted, that the Respondent's clients are properly protected from a repeat of the misconduct. At the reinstatement hearing, the respondent should be required to establish that she has sufficient monitoring and other safeguards in place to ensure that the misconduct in this case will not be repeated."

## STANDARD OF REVIEW

The applicable standards of review in disciplinary cases are well established:

"In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. [Citation omitted.] Any attorney misconduct must be established by substantial, clear, convincing, and satisfactory evidence. *In re Carson*, 252 Kan. 399, 406, 845 P.2d 47 (1993); see also Supreme Court Rule 211(f) (2002 Kan. Ct. R. Annot. 260) (misconduct to be established by clear and convincing evidence).

"This court views the findings of fact, conclusions of law, and recommendations made by the disciplinary panel as advisory, but gives the final hearing report the same dignity as a special verdict by a jury or the findings of a trial court. Thus, the disciplinary panel's report will be adopted where amply sustained by the evidence, but not where it is against the clear weight of the evidence. [Citations omitted.]." *In re Lober*, 276 Kan. 633, 636-637, 78 P.3d 442 (2003).

## ISSUE

Respondent takes no exception to the panel's findings of fact and conclusions of law. The attorney misconduct has been established by substantial, clear, and convincing evidence. The issue before us is the appropriate discipline to be imposed.

Respondent takes exception to the hearing panel's application of Standard 4.62 of the ABA Standards for Imposing Lawyer Sanctions, which provides for suspension when a lawyer's knowing deception causes actual injury or potential injury to a client. Respondent argues that the panel failed to describe the injury or refer to any evidence to support its conclusion that Sprint suffered actual injury. Respondent further argues that there was no evidence of actual injury to support such a finding. Respondent ignores the potential injury portion of the standard.

The ABA Standards serve as guidelines to assist the panel in imposing disciplinary sanctions. Thus, the panel is not required to cite, discuss, or apply any of the standards:

"Neither this court nor the hearing panel are required to cite and discuss every potentially applicable standard. Moreover, discussion of any standard is not required. The Standards are guidelines to assist courts in selecting appropriate and uniform discipline, depending upon the facts and the aggravating and mitigating factors of each case. See *In re Anderson*, 247 Kan. 208, 212, 795 P.2d 64 (1990),

*cert. denied* 498 U.S. 1095, (1991); Standards, pp. 6-7." *In re Keithley*, 252 Kan. 1053, 1057, 850 P.2d 227 (1993).

See also, Internal Operating Rules of the Kansas Board for Discipline of Attorneys, E.3 (2004 Kan. Ct. R. Annot. 331) (panel may apply the ABA Standards in determining discipline and may reference or discuss the standards in the hearing report); *cf.*, Supreme Court Rule 211(f) (2004 Kan. Ct. R. Annot. 275) (requiring panel to set forth aggravating and mitigating factors affecting the nature or degree of the recommended discipline).

Accordingly, the panel was permitted to consider, apply, and discuss ABA Standard 4.62 in considering what discipline should be recommended, but was not required to do so.

It is uncontroverted that respondent's failure to file a position statement with the FCHR in the Simmons employment discrimination administrative claim caused the FCHR to issue an adverse determination of reasonable cause against Sprint. It is also uncontroverted that respondent's intentional false entries in Sprint's case tracking system were intended to deceive Sprint and prevent it from discovering her inaction on the Simmons matter. And further, it is uncontroverted that her falsifications did, in fact, prevent Sprint from discovering her inaction before the adverse determination was issued. Actual injury or potential injury to the client was not necessary to the panel's recommended discipline although the facts herein support both.

We find no merit in respondent's issue herein as to "actual injury" alleged deficiencies in the recommendation portion of the final hearing report.

## CONCLUSION

In her answer, respondent admitted all of the factual allegations in the formal allegation and did not contest that these facts support the alleged violations of the Kansas Rules of Professional Conduct as charged in the amended formal complaint and as found by the panel. The only issue before us relates wholly to the recommended discipline. We agree with the panel's concerns set forth in its recommendation of appropriate discipline.

We have some problems with the feasibility and value of the proposed requirement for seeking reinstatement under Supreme Court Rule 219 (2004 Kan. Ct. R. Annot. 312.). There is no indication that respondent's misconduct arose from mental or physical problems, alcoholism, inappropriate drug use, a personal crisis, or other factors that can be tested, checked, or otherwise determined to have been remedied. The majority of the court finds the appropriate discipline is a 1-year suspension effective on the filing of this opinion. A minority of the court would impose a 2-year suspension.

IT IS THEREFORE ORDERED that respondent, Rebecca A. Ware, be suspended from the practice of law in the state of Kansas for a period of 1 year, commencing on the filing date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2004 Kan. Ct. R. Annot. 237).

IT IS FURTHER ORDERED that the respondent comply with the provisions of Supreme Court Rule 218 (2004 Kan. Ct. R. Annot. 301).

IT IS FURTHER ORDERED that this opinion be published in the official Kansas Reports and that the costs herein be assessed to the respondent.

NUSS, J., not participating.

LOCKETT, J. Retired, assigned.