- 320
- 65 A.3d 125
- ATTORNEY GRIEVANCE COMMISSION OF MARYLAND
- v.
- Brien Michael PENN.
- Misc. Docket AG No. 9, Sept. Term, 2012.
- Court of Appeals of Maryland.
- April 25, 2013.

Then the image.

65 A.3d 125

# ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

## Brien Michael PENN.

Misc. Docket AG No. 9, Sept. Term, 2012.

Court of Appeals of Maryland.

April 25, 2013.

322

Marianne J. Lee, Assistant Bar Counsel, (Glenn M. Grossman, Bar Counsel, Attorney Grievance Commission, Maryland), for Petitioner.

Brien Michael Penn, pro se, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and McDONALD, JJ.

BATTAGLIA, J.

Brien Michael Penn, Respondent, was admitted to the Bar of this Court on December 17, 2003. On April 9, 2012, the Attorney Grievance Commission ("Bar Counsel"), acting pursuant to Maryland Rule 16–751(a),[1] filed a "Petition for Disciplinary or Remedial Action" against Penn, which incorporated a complaint from Ira Oring, on behalf of Penn's former employer, Old Republic National Title Insurance Company ("Old Republic"). Bar Counsel's petition charged Penn with violating several Maryland Lawyers' Rules of Professional Conduct to include, 7.5(a) (Firm Names and Letterheads),[2] and 8.4(a)-(d) (Misconduct).[3] Pursuant to Rule 16–757,[4] in an

---

**1.** Rule 16–751(a) provides, in relevant part:

> **(a) Commencement of disciplinary or remedial action.** (1) Upon approval or direction of Commission. Upon approval or direction of the [Attorney Grievance] Commission, Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals.

**2.** Rule 7.5(a) provides:

> (a) A lawyer shall not use a firm name, letterhead or other professional designation that violates Rule 7.1. A trade name may be used by a lawyer in private practice if it does not imply a connection with a government agency or with a public or charitable legal services organization and is not otherwise in violation of Rule 7.1.

> Rule 7.1 in turn provides:
> A lawyer shall not make a false or misleading communication about the lawyer or the lawyer's services. A communication is false or misleading if it:
> (a) contains a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading;
> (b) is likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Maryland Lawyers' Rules of Professional Conduct or other law; or
> (c) compares the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated.

**3.** Rule 8.4 provides:

> It is professional misconduct for a lawyer to:

order dated April 5, 2012, we referred the petition to Judge Thomas F. Stansfield of the Circuit Court for Carroll County for a hearing.

At the hearing, Bar Counsel presented testimony from Mr. Oring; Albert Boyce, Senior Vice–President and Counsel for Old Republic; Shonita Mason, Claims Counsel at Old Republic

---

(a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice.

4. Rule 16–757 provides:

(a) **Generally.** The hearing of a disciplinary or remedial action is governed by the rules of evidence and procedure applicable to a court trial in a civil action tried in a circuit court. Unless extended by the Court of Appeals, the hearing shall be completed within 120 days after service on the respondent of the order designating a judge. Before the conclusion of the hearing, the judge may permit any complainant to testify, subject to cross-examination, regarding the effect of the alleged misconduct. A respondent attorney may offer, or the judge may inquire regarding, evidence otherwise admissible of any remedial action undertaken relevant to the allegations. Bar Counsel may respond to any evidence of remedial action.

(b) **Burdens of proof.** The petitioner has the burden of proving the averments of the petition by clear and convincing evidence. A respondent who asserts an affirmative defense or a matter of mitigation or extenuation has the burden of proving the defense or matter by a preponderance of the evidence.

(c) **Findings and conclusions.** The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed. Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing. The clerk shall mail a copy of the statement to each party.

(d) **Transcript.** The petitioner shall cause a transcript of the hearing to be prepared and included in the record.

(e) **Transmittal of record.** Unless a different time is ordered by the Court of Appeals, the clerk shall transmit the record to the Court of Appeals within 15 days after the statement of findings and conclusions is filed.

at the time Penn was employed at Old Republic; and Kristin Sherfey, a notary and Legal Assistant at Old Republic when Penn was employed at Old Republic. Penn represented himself and testified on his own behalf and also called Jacquelyn Sheree Proctor, Center Manager at H.Q., an affiliate of the Regus Management Group that provided virtual-office space to Penn; and Ashley Bishop, an administrative assistant at Old Republic. Also, various documents were admitted into evidence, included among others, Old Republic's employee policies; correspondence between Penn and Marco Oliveira, a judgment debtor of Old Republic; an assignment of the Oliveira judgment from Old Republic to Bennett & Kuhn, signed by Penn; an assignment of Old Republic's interest in a security deed, executed by Lisa D. Gastgeb, to Bennett & Kuhn, also signed by Penn; copies of notes regarding the Oliveira judgment and the Gastgeb security deed that were entered into a database on Old Republic's computer to track the claims; copies of eighteen $1,000 money orders endorsed by Penn; and bank records and formation documents of Bennett & Kuhn. Thereafter, Judge Stansfield issued the following Findings of Fact and Conclusions of Law, in which he determined that Penn violated Rules 8.4(a), (c), and (d), but did not violate Rules 7.5(a) and 8.4(b):

## *FINDINGS OF FACT* [5]

### *I. General Findings of Fact*

Brien Michael Penn, hereinafter referred to as "Respondent," was admitted to the Bar of Maryland on December 17, 2003. On or about April 22, 2008, the Respondent was hired as a claims administrator under the job title "Claims Counsel" for the National Services Group, a division of Old Republic National Title Insurance Company, hereinafter "Old Republic." The Respondent was hired by Albert Boyce, hereinafter "Boyce," a Senior Vice President and Counsel for the National Services Group, to serve as a full-

---

**5.** References to the record have been omitted.

time employee at the Old Republic office located in Columbia, Maryland. As Claims Counsel, the Respondent's duties primarily focused upon the response and administration of claims on title insurance policies issued by Old Republic agents. For claims that required curative litigation, the Respondent was responsible for retaining outside counsel to cure title defects and/or defend litigation, as well as the supervision and monitoring of such outside counsel. As an employee and counsel for Old Republic, the Respondent represented his employer, Old Republic, and thus owed a fiduciary duty of good faith and loyalty and was required to act for the benefit of Old Republic at all times.

Old Republic is a national title insurance underwriter, incorporated in Minnesota, with its primary office located in Minneapolis, Minnesota. Old Republic is licensed to do business in Maryland, with a local office in Columbia, Maryland. At the time of the Respondent's employment with Old Republic, Old Republic employed two (2) other claims administrators in the Columbia office. One was another attorney Claims Counsel, Shonita Mason, hereinafter "Mason," and the second was a non-attorney claims administrator, Lisa Snowden, hereinafter "Snowden." Both attorney and non-attorney claims administrators performed essentially the same function, however, attorney employees were expected to function at a higher level of understanding than their non-attorney counterparts. Mr. Boyce was the direct supervisor of all claims administrators in the Old Republic Columbia office. Upon their hiring, the claims administrators, including the Respondent, were provided a copy of an employee handbook which outlined and described the company policies of Old Republic, including the Code of Business Conduct and Ethics, Conflict of Interest, Internet and Email Use, and E-mail Policy. Old Republic policy prohibited employees from engaging in employment or outside activities that would be construed as not acting in the best interest of the company. Old Republic policy required that any employee serving as a director of a firm having dealings with Old Republic must disclose that fact to Old Republic so

that it may determine whether the situation presents a conflict of interest.

## II. New York Unrecorded Mortgage Claims

As Claims Counsel, Respondent was assigned to oversee claims in multiple states, including Georgia, Florida, New York, California, and Nevada. Part of his responsibility as Claims Counsel included hiring or retaining outside counsel in those jurisdictions to represent the insured of Old Republic in filing claims or correcting title defects. Although, as Claims Counsel, the Respondent was given some amount of discretion in the retention of outside counsel in the various jurisdictions, the Respondent was not permitted to conduct business transactions for his own benefit with Old Republic, either directly or indirectly through outside counsel, particularly without prior approval from his direct supervisor, Mr. Boyce. The Respondent, in his capacity as Claims Counsel for Old Republic, had access to various vendors that Old Republic used and to various confidential, proprietary information of Old Republic, all of which were to be used for the benefit of Old Republic, without any self-interest or self-dealing.

In January 2009, Respondent formed a Delaware limited liability company named Bennett & Kuhn, LLC, hereinafter "B & K." Respondent obtained a Federal EIN number for the company, leased a virtual office with a Washington, DC address, and published a website for the company that identified the Respondent as the owner and operator of the company. This entity was created by the Respondent to become involved in the legal work performed by the outside counsel retained by the Claims Counsel at Old Republic. As part of the responsibilities of Claims Counsel at Old Republic, the Respondent frequently administered claims involving unrecorded mortgages. These claims were typically resolved by retaining local counsel to file an action for declaratory relief on behalf of the insured mortgage lender. In January 2009, Respondent, on behalf of Old Republic, retained an attorney in Buffalo, New York, Jonathan S.

Hickey, Esquire, hereinafter "Hickey," with the law firm Burden, Gulisano & Hickey LLC. The respondent advised Hickey that another law firm, Respondent's firm B & K, would be responsible for preparing the initial pleadings and exhibits and would send the invoices to Hickey, who would then incorporate these fees in his monthly invoices to Old Republic.

In nine separate cases from January 2009 to December of 2009, Respondent prepared pleadings by and through his company, B & K. The fees for these services were charged to Hickey's law firm in New York, and Hickey subsequently incorporated these fees into his invoices to Old Republic. The Respondent, as Claims Counsel for Old Republic, approved for payment by Old Republic a total of nine monthly invoices from Hickey's firm that included B & K invoices that Respondent created and sent to Hickey. Old Republic paid Hickey's firm, and then Hickey's firm paid B & K a total of $4,725 in fees, which were then deposited into the B & K business account.

At no time did Respondent ever disclose to anyone at either Hickey's firm or at Old Republic that B & K was his own firm. At no time prior to the initiation of this arrangement did the Respondent attempt to obtain approval to conduct business in this manner and receive payment for these services from Mr. Boyce or anyone else at Old Republic. At no time during the time frame in which the Respondent was receiving compensation for his services directly related to the claims administration of Old Republic matters did the Respondent inform Mr. Boyce or anyone else at Old Republic of this arrangement. Though Respondent asserts that these transactions were fair and reasonable to Old Republic, and Boyce and Mason both concurred that the flat rate charged by the Respondent was a very reasonable rate as compared to those charged by other outside counsel, the arrangement the Respondent had created with Hickey amounted to self dealing, and the Respondent took significant steps to avoid Old Republic discovering that portions of the fees the Respondent was approving as Claims Counsel

were to be distributed to a company with which he had a relationship.

## III. Old Republic Collection Assignments

### a. The Oliveira Matter

After Respondent's termination from employment, Old Republic discovered that Respondent assigned a judgment that was owed to Old Republic by judgment debtors Marco and Jennifer Oliveira, hereinafter referred to as "Oliveira Judgment" or "Oliveira," to his own firm, B & K. Old Republic obtained a judgment against Oliveira in the amount of $ 234,880 as a result of disbursements that it made to settle a claim. The Respondent, as Claims Counsel, was assigned the task of instituting recovery efforts on the judgment on behalf of Old Republic. On or about October 15, 2008, Respondent, on behalf of Old Republic, took the deposition of Marco Oliveira, during which the Respondent and Mr. Oliveira reached an agreement regarding payments on the judgment. This agreement was such that Oliveira was to make payment of $100,000 over a four (4) year period, the judgment would be released. Subsequently, Old Republic received a total of $35,000 from Oliveira. On October 16, 2009, Respondent prepared and signed an Assignment of Judgment for Old Republic, assigning the judgment from Old Republic to his own firm B & K. Although the assignment provided that the judgment was "being assigned by the Assignor to the Assignee for good and valuable consideration," Respondent did not pay any consideration to Old Republic for the assignment. On October 27, 2009, Respondent prepared and sent a letter to Oliveira stating that the judgment had been assigned to B & K, and offering to release the remaining balance if a payment of $18,000, approximately 30% of the remaining judgment, was made to B & K, mailed to B & K's Washington D.C. address, by December 18, 2009.

The Respondent did not have any authority to execute an Assignment on behalf of Old Republic. The Assignment

and subsequent settlement of the judgment to $18,000 was made by the Respondent without Old Republic's knowledge or consent. The Respondent never advised Boyce or anyone at Old Republic that he had assigned the Oliveira judgment to his own firm B & K, and subsequently settled it for $18,000, to be paid to B & K. The Respondent took steps to conceal the assignment from Old Republic, including filing misleading reports in the Master File Report, where claims counsel of Old Republic were required to keep updated notes concerning ongoing matters.

On December 11, 2009, Oliveira sent $18,000 in money orders to Respondent, after the Respondent was fired from Old Republic. These money orders were never deposited into any B & K account. Instead, respondent restrictively endorsed each money order to the order of Old Republic, and mailed them directly to Old Republic. It can not be shown, as the petitioner contends, that this endorsement was made only as a consequence of the Respondent learning of the impending civil case and professional complaint against him.

It is the finding of this Court that the Respondent engaged in self-dealing and did assign this judgment to his own company, B & K, without the proper authorization from or notification to Old Republic. Furthermore, the Respondent took measures to mislead and conceal this assignment from Old Republic. However, the Court can not find, based on the facts presented, that the Respondent intended to permanently deprive Old Republic of the balance of this settlement for his own benefit, and therefore can not conclude that a conversion or theft had occurred.

b. *The Gastgeb Matter*

After respondent's termination of employment, Old Republic further discovered that Respondent assigned another Old Republic asset to B & K for no consideration. The Respondent executed an undated Assignment of Security Deed from Old Republic on behalf of Old Republic, assigning Old Republic's interest in the security deed executed by

Lisa Gastgeb, hereinafter "Gastgeb," to his own firm B & K. The Respondent did not pay any consideration for this assignment. The Respondent never advised Boyce or anyone at Old Republic of the Assignment of Security Deed. The Respondent, as Claims Counsel of Old Republic, never had authority from Old Republic to assign the security deed. Again, Respondent took steps to conceal the assignment from Old Republic, including omissions and misleading reports in the Master File Report.

The Respondent was fired before any collection efforts were made on the Gastgeb matter. An assignment of the Gastgeb Security Deed from B & K back to Old Republic was later executed and recorded. No amounts of money were ever received by B & K. Therefore, this Court again finds that the Respondent acted in a self-dealing manner and acted to conceal this self-dealing. However because the Respondent did not take possession of any money or property owed to Old Republic, the Court again can not go so far as to say the Respondent had committed a theft or misappropriation from Old Republic without evidence to support the claim that he intended to do so.

## CONCLUSIONS OF LAW

The clear and convincing evidence presented to the court in this case demonstrates to the Court that the Respondent engaged in self-dealing while employed at Old Republic as Claims Counsel when he created the company B & K and devised a scheme to receive payment from Old Republic to this company for preparing pleadings as an outside counsel. The Respondent never disclosed his relationship with B & K to Boyce nor anyone else at Old Republic. The Respondent was never authorized to engage in self-dealing transactions while employed at Old Republic. He was never authorized to refer Old Republic work to his own company B & K and accept fees paid by Old Republic. He was never authorized to assign assets of Old Republic to B & K to assist in collection. The Respondent took measures to conceal the self-deal and assignments of collection

matters from Old Republic and the employees thereof. The Respondent['s] intentional, willful, and deliberate conduct violated Maryland Rule of Professional Conduct 8.4(a), (c), and (d).

The Court can not find by a showing of clear and convincing evidence that the Respondent committed a criminal act, and therefore finds no violation of Maryland Rule of Professional Conduct 8.4(b). Similarly, the Court does not find by clear and convincing evidence that the Respondent, in the creation of Bennett & Kuhn LLC, used a firm name or professional designation that violates Rule 7.1, and therefore finds no violation of Maryland Rule of Professional Conduct 7.5[.]

## *MITIGATING FACTORS*

The Respondent submits that the following should be considered as mitigating factors pursuant to the Maryland Rules of Professional Conduct and the comments therein. The Court will briefly address each such factor as the Respondent has listed.

(a) *Absence of prior disciplinary record.* The Court finds no evidence that any prior disciplinary action has been taken against the Respondent.

(b) *Absence of a selfish motive.* The Court finds that the Respondent may not have received personal payments from B & K, he still had an ownership interest in this entity and acted to promote that interest through the payment scheme he devised.

(c) *Cooperation with Bar Counsel.* The Court finds no evidence to show that the Respondent failed to cooperate with Bar Counsel's investigation.

(d) *Inexperience.* The Court finds that the Respondent had only been admitted to the bar for five and a half years. However, inexperience does not have any bearing upon an ethical violation.

(e) *Character and Reputation.* There is no evidence to conclude, other than the facts of this case, that the Respondent was not of good character and reputation.

(f) *Delay in disciplinary proceedings.* The Respondent was significantly impaired in his ability to defend his case due to the delay in these proceedings. The court does find that Old Republic destroyed or otherwise did not produce any computer files the Respondent may have used to defend himself, other than those used to make the Bar Counsel's case against him. However, in this Matter, the Court finds that the Respondent has violated his obligation of disclosure and self-dealing and there is no evidence presented to conclude these files would have negated this misconduct.

(g) *Other penalties or sanctions.* The Respondent argues that this proceeding has damaged his professional standing and future employment prospects. This consideration[ ] does not arise until the Court of Appeals addresses the appropriate sanctions in this matter based upon the findings of this Court.

(h) *Absence of Harm.* The Respondent argues that his employer, Old Republic, was not harmed as a result of his misconduct. The Court finds that harm to Old Republic does not bear upon the nature of Respondent's ethical violations this court has found.

(i) *Remorse.* The Respondent did appear to be remorseful for his actions.

While there may be considerations of the mitigating factors in this case by the Court of Appeals, this Court does not see any of the arguments advanced by the Respondent in his proposed Findings of Fact and Conclusions of Law as sufficient to rise to the level that the findings of this Court made by clear and convincing evidence are incorrect.

"This Court has original and complete jurisdiction over attorney discipline proceedings in Maryland." *Attorney Grievance v. Rand,* 429 Md. 674, 712, 57 A.3d 976, 998 (2012), quoting *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19

A.3d 904, 925 (2011). "In our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Chapman,* 430 Md. 238, 273, 60 A.3d 25, 46 (2013), quoting *Attorney Grievance v. Lara,* 418 Md. 355, 364, 14 A.3d 650, 656 (2011). Pursuant to Rule 16–759(b)(1),[6] we review the circuit court judge's conclusions of law *de novo. Attorney Grievance v. Jones,* 428 Md. 457, 467, 52 A.3d 76, 82 (2012) (per curiam).

■ Bar Counsel filed no exceptions to Judge Stansfield's Findings of Fact and Conclusions of Law, but Penn excepted to several of Judge Stansfield's factual findings. Penn's primary exception, apparently, is that his defense was adversely impacted by a delay in the proceedings, during which Old Republic destroyed various files, and, as a result, this case should be dismissed. Judge Stansfield, however, found that the files would not have negated Penn's misconduct:

> (f) *Delay in disciplinary proceedings.* The Respondent was significantly impaired in his ability to defend his case due to the delay in these proceedings. The court does find that Old Republic destroyed or otherwise did not produce any computer files the Respondent may have used to defend himself, other than those used to make the Bar Counsel's case against him. However, in this Matter, the Court finds that the Respondent has violated his obligation of disclosure and self-dealing and there is no evidence presented to conclude these files would have negated this misconduct.

Penn asserts that Judge Stansfield erred in determining that the files would not have negated his misconduct based on Penn's proffer that the files would have proven that Bennett & Kuhn was not a "fictitious" entity; that he "took great care" to maintain a separate existence for Bennett & Kuhn; that

---

6. Rule 16–759(b)(1) states:

 (b) **Review by Court of Appeals.** (1) Conclusions of law. The Court of Appeals shall review de novo the circuit court judge's conclusions of law.

Bennett & Kuhn had separate finances and accounts; that he never received personal compensation from Bennett & Kuhn; that all fees charged by Bennett & Kuhn were reasonable and fair; that the assignments to Bennett & Kuhn were not part of a fraudulent misappropriation scheme; that he did not work on Bennett & Kuhn matters during Old Republic's business hours while he was an employee; that he never used Old Republic's resources to work on Bennett & Kuhn matters; that his business with Bennett & Kuhn actually benefitted Old Republic by reducing Old Republic's costs; that his payoff arrangement with Oliveira would have been corroborated; that his belief that he could list himself as an Assistant Vice President on the assignment of the Oliveira judgment would have been documented; and that he had authority to execute assignments as part of his employment with Old Republic.

 Essentially, prejudice is the gravamen for any dismissal motion to be favorably entertained by this Court in any attorney grievance action; a claim of delay must be accompanied by a showing of prejudice. In *Anne Arundel Bar Association, Inc. v. Collins*, 272 Md. 578, 325 A.2d 724 (1974), Collins, an attorney who was alleged to have bribed members of the Board of License Commissioners to influence their decisions regarding two applications for alcoholic beverage licenses, claimed that the disciplinary proceedings against him were barred by limitations and laches, because of the lapse of a four-year period between his indictment and the filing of a grievance petition. In denying his motion to dismiss, we explained that there was no general statute of limitations that applied to disciplinary proceedings against attorneys and that, with respect to laches, we said, "[b]asic to the defense of laches is the need to show some disadvantage or prejudice to the party asserting it. There must be either prejudice or circumstances making it inequitable to grant the relief sought." *Id.* at 584, 325 A.2d at 728.

Similarly, in *Attorney Grievance Commission v. Kahn*, 290 Md. 654, 431 A.2d 1336 (1981), Kahn, who faced allegations of violating numerous provisions of the Disciplinary Rules of the Code of Professional Responsibility, claimed that laches

barred Bar Counsel from proceeding with its disciplinary action when the Review Board had directed that charges be filed against Kahn two years prior to the filing of the petition. We acknowledged that "[w]hile the delay in Kahn's case was gross and inexcusable—a fact readily acknowledged by newly appointed Bar Counsel during oral argument on the exceptions—we agree with the [hearing judge] that the evidence does not show that Kahn was prejudiced by the delay." *Id.* at 684, 431 A.2d at 1352. *See also Attorney Grievance Comm'n v. Engerman,* 289 Md. 330, 346, 424 A.2d 362, 370 (1981) (per curiam); *Attorney Grievance Comm'n v. Owrutsky,* 322 Md. 334, 339–40, 587 A.2d 511, 513 (1991).

In the present case, we agree with Judge Stansfield that the files to which Penn refers would not have negated his misconduct. Penn testified at the hearing in accordance with his proffer before us about what the documents would have proven. Judge Stansfield heard Penn's testimony and did not find it to be compelling to negate his misconduct, so that the absence of the documents could not be prejudicial.

Penn argues that Judge Stansfield did not cite or identify specific evidence with respect to three of the more notable findings: that Penn "took significant steps to avoid Old Republic discovering that portions of fees the Respondent was approving as Claims Counsel" were being distributed to Bennett & Kuhn, that Penn "took measures to mislead and conceal" the assignment of the Oliveira judgment to Bennett & Kuhn, and that Penn "took steps to conceal" the assignment of the Gastgeb security deed to Bennett & Kuhn. Penn's exceptions rest on the foundation that Judge Stansfield did not cite the bases from the record to support the finding and that, in fact, the record does not support these findings.

██ A hearing judge, in explicating his or her factual findings, does not have to identify all of the bases in the record in support, as the Rules require a hearing judge to simply enter those facts that he or she finds: "The judge shall prepare and file or dictate into the record a statement of the judge's findings of fact, including findings as to any evidence

regarding remedial action, and conclusions of law. If dictated into the record, the statement shall be promptly transcribed...." Maryland Rule 16–757(c). Rather, "[w]e make an independent and in-depth review of the entire record, with particular attention to the evidence relating to the disputed factual findings." *Attorney Grievance Comm'n v. Garland,* 345 Md. 383, 392, 692 A.2d 465, 469 (1997). Furthermore, "[i]n our independent review of the record, we accept the hearing judge's findings of fact as prima facie correct unless shown to be clearly erroneous." *Attorney Grievance v. Jones,* 428 Md. 457, 467, 52 A.3d 76, 82 (2012), quoting *Attorney Grievance v. Stern,* 419 Md. 525, 556, 19 A.3d 904, 925 (2011).

As point of fact, Judge Stansfield did recite record bases for his findings of concealment and failing to disclose:

> At no time did Respondent ever disclose to anyone at either Hickey's firm or at Old Republic that B & K was his own firm. At no time prior to the initiation of this arrangement did the Respondent attempt to obtain approval to conduct business in this manner and receive payment for these services from Mr. Boyce or anyone else at Old Republic. At no time during the time frame in which the Respondent was receiving compensation for his services directly related to the claims administration of Old Republic matters did the Respondent inform Mr. Boyce or anyone else at Old Republic of this arrangement.

The record also reflects that Penn recognized in a communication with Old Republic after he was terminated that he had engaged in concealment: "I'm acknowledging that I engaged in some level of self dealing and concealment but I have made the very legitimate point that this conduct did *not* cause any monetary damage to Old Republic." (emphasis in original).

Albert Boyce, Penn's direct supervisor at Old Republic, testified at length that Penn never informed him about using Bennett & Kuhn to draft pleadings:

> [Bar Counsel]: Now did Mr. Penn ever tell you or inform you during his time of employment with Old Republic that he created this company called Bennett & [Kuhn]?

[Mr. Boyce]: No.

[Bar Counsel]: And that it was to be for document preparation for these outside counsel?

[Mr. Boyce]: No.

\* \* \*

[Bar Counsel]: And did you know about this advance prior to Mr. Penn's termination?

[Mr. Boyce]: I did not.

[Bar Counsel]: Did Mr. Penn ever approach you with the consideration of him drafting pleadings for outside counsel to reduce the cost to Old Republic?

[Mr. Boyce]: No.

[Bar Counsel]: So he just did that on his own? [Mr. Boyce]: It appears that way. Yes.

[Bar Counsel]: And if he did ask you, would you have permitted it?

[Mr. Boyce]: I would have—it's hard to say. I wouldn't have permitted an arrangement where he created some outside company and was billing the company secretively like that. He was a full time employee, if he was able to generate pleadings and was able to save the money to the company for doing that, I probably would have been okay with that.

We overrule Penn's exception to Judge Stansfield's finding that Penn took "significant steps to avoid Old Republic discovering that portions of the fees Respondent was approving as Claims Counsel were to be distributed to a company with which he had a relationship."

With respect to Penn's exception to the finding that he "took measures to mislead and conceal" the assignment of the Oliveira judgment from Old Republic to Bennett & Kuhn, the record again supports the finding as a result of Albert Boyce's testimony:

[Mr. Boyce]: [W]e received a claim from a lender to whom we had issued a loan policy of title insurance. The agent had failed to record the mortgage that was insured.

Mr. Oliveira was the borrower and the owner of the proper-ty. Mr. Oliveira sold the property and since the mortgage that we insured had never been recorded, when Mr. Oliveira sold his property, the mortgage was not paid off and Mr. Oliveira received, I think it was around $225,000 that should have went to pay off the mortgage, but it went into Mr. Oliveira's pockets.

So we paid off the lender, took an assignment of the lender's note, and retained counsel in Florida to file suit against Mr. Oliveira. And we obtained a civil judgment I think somewhere in the range of 225 or $240,000.

He testified that Penn had not informed him of the assign-ment of the Oliveira judgment to Penn:

[Bar Counsel]: Now when did you first come to learn of this assignment of judgment?

[Mr. Boyce]: Sometime after Mr. Penn's employment was terminated with Old Republic.

[Bar Counsel]: And what was your reaction once you understood this judgment was assigned to Bennett & [Kuhn]?

[Mr. Boyce]: We discussed it with in-house counsel and decided to retain outside counsel to file a lawsuit to deter-mine whether this was the only incidence of theft of our property or how—at that point it was an indication that Mr. Penn had freely taken property belonging to Old Republic.

We weren't sure how broad of a scope that was, so we filed a lawsuit primarily to determine what he had done while he was an employee of Old Republic.

\* \* \*

[Bar Counsel]: Did you come to learn of emails between Mr. Penn and Mr. Oliveira concerning reducing the I guess what later became a $100,000 settlement to $18,000.

[Mr. Boyce]: I do recall some emails or letters or some written communication.

\* \* \*

[Bar Counsel]: Did you have an occasion to speak with Marco Oliveira after Mr. Penn was terminated?

[Mr. Boyce]: I did. Yes.

[Bar Counsel]: Okay. And what was discussed concerning this $18,000 assignment?

[Mr. Boyce]: Well, I wanted to talk to Mr. Oliveira to tell him that Mr. Penn didn't have authority to settle the case for $18,000 and that we expected payment of more money than that. He took the position that Mr. Penn was an employee of Old Republic and had authority to enter into the settlement agreement.

He made it clear to me that he was going to fight with us, that he had sent the $18,000 to Bennett & [Kuhn], and he considered that payment to have been a final payment.

As a result, we overrule Penn's exception to the finding that Penn "took measures to mislead and conceal" the assignment of the Oliveira judgment to Bennett & Kuhn.

Penn's final factual exception is directed at Judge Stansfield's finding that Penn "took steps to conceal" the Gastgeb assignment to Bennett & Kuhn, based in part on the fact that there were "omissions and misleading reports in the Master File Report."

Again, Albert Boyce testified regarding the fact that the Master File Report, maintained to document claims, did not include reference to the assignment of the Gastgeb security deed to Bennett & Kuhn:

[Bar Counsel]: Okay. And if you can take an opportunity to review the entries. Is there any—and then afterwards answer if there is any reference to the assignment of that deed to Bennett & [Kuhn]?

[Mr. Boyce]: There is no mention of an assignment to Bennett & [Kuhn].

Mr. Boyce also testified that Penn never told him about the assignment of the security deed:

[Bar Counsel]: It is an assignment of security deed that assigns the deed to Bennett & [Kuhn]?

[Mr. Boyce]: Yes.

[Bar Counsel]: And when did you first see this assignment?

[Mr. Boyce]: It was sometime after Mr. Penn's employment was terminated.

[Bar Counsel]: Now is this something in which Mr. Penn would have to have approval from you to assign this deed to Bennett & [Kuhn]?

[Mr. Boyce]: I couldn't give Mr. Penn authority. I couldn't assign a security deed to a company for no consideration.

[Bar Counsel]: So you couldn't even have done it?

[Mr. Boyce]: No, I couldn't and I wouldn't. And I wouldn't be in a position to give Mr. Penn authority to do that.

[Bar Counsel]: And did Mr. Penn ever come and ask you for authority to do this?

[Mr. Boyce]: No.

As a result, we overrule Penn's exception to the factual finding that Penn "took steps to conceal" the Gastgeb assignment from Old Republic to Bennett & Kuhn.

█ Judge Stansfield found violations of Rule 8.4(a), (c), and (d), based on Penn's "intentional, willful, and deliberate conduct" involving Bennett & Kuhn. Based on our *de novo* review, we agree. Rule 8.4(c) provides, "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]" Failure to disclose and concealment in self-dealing in employment relationships constitutes behavior violative of Rule 8.4(c). *See, e.g., Attorney Grievance v. Keiner,* 421 Md. 492, 521–23, 27 A.3d 153, 171–72 (2011) (agreeing with the attorney's concession that his conduct, "alter[ing] the law firm's computer files to make it appear that the cases were meritless and therefore 'closed' . . . with the intention of taking those clients from the law firm and making them his, once he established his own practice," constituted a violation of Rule 8.4(c), among other

Rules); *Attorney Grievance v. Carithers,* 421 Md. 28, 55, 25 A.3d 181, 196–97 (2011) (concluding that an attorney violated Rule 8.4(c) because, while serving as "of counsel" to a firm and running a side practice at the same time, he did not accurately define his representation of clients, did not separate legal fees between the two practices, and used the firm's resources to benefit his own side practice); *Attorney Grievance v. Palmer,* 417 Md. 185, 199, 9 A.3d 37, 45 (2010) (agreeing with the trial court that an attorney violated Rule 8.4(c) when he "misrepresented the status of cases to partners in Firm who unknowingly passed along those lies to the clients, and fabricated court documents to support his misrepresentations that suits had been filed in several cases"); *Attorney Grievance v. Potter,* 380 Md. 128, 153–59, 844 A.2d 367, 382–86 (2004) (concluding that attorney violated Rule 8.4(c) because he, without his employer's knowledge, removed case files and deleted computer files from his firm's computer in an effort to start his own practice).

Concealment in an employment context outside of a law firm can also constitute a violation of Rule 8.4(c). *See, e.g., Attorney Grievance v. Floyd,* 400 Md. 236, 251–54, 929 A.2d 61, 70–71 (2007) (concluding that it was a violation of Rule 8.4(c) for an attorney to provide a letter of support for her petition for a higher salary from a former employer, without disclosing that the former employer was her husband); *In the Matter of Ware,* 279 Kan. 884, 112 P.3d 155, 159 (2005) (concluding that in-house lawyer violated Rule 8.4(c) when she falsely reported the status of a matter assigned to her in her employer's case tracking system, used by the company to follow matters assigned to attorneys in the company's law department).

Judge Stansfield also concluded that Penn violated Rule 8.4(d), which provides, "It is professional misconduct for a lawyer to: (d) engage in conduct that is prejudicial to the administration of justice." As we have explained, "[a]n attorney engages in conduct prejudicial to the administration of justice when he or she engages in conduct which erodes public confidence in the legal profession." *Carithers,* 421 Md. at 56, 25 A.3d at 198. Penn negotiated with Oliveira and Gastgeb

without permission of his employer and without authority to do so, and engaged in self-dealing without disclosure to his employer or Mr. Hickey, the attorney from Buffalo. Clearly, his actions eroded the confidence of not only his employer but also third parties.

Rule 8.4(a) provides, "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Maryland Lawyers' Rules of Professional Conduct[.]" Judge Stansfield concluded, and we agree, that Penn violated Rules 8.4(c) and (d). This conclusion sufficiently satisfies the requirements of a Rule 8.4(a) violation, as we have previously held that a violation of multiple Rules may constitute a violation of Rule 8.4(a). *Carithers*, 421 Md. at 57, 25 A.3d at 198.

 We now turn to determining the appropriate sanction. Bar Counsel recommends disbarment, while Penn recommends a reprimand. We have often stated that the purpose of the attorney disciplinary process is not to punish the errant attorney but to protect the public "through deterrence of the type of conduct which will not be tolerated, and by removing those unfit to continue in the practice of law from the rolls of those authorized to practice in this State." *Keiner*, 421 Md. at 522, 27 A.3d at 171, quoting *Attorney Grievance v. Sucklal*, 418 Md. 1, 10 n. 3, 12 A.3d 650, 655 n. 3 (2011). "[W]e consider the nature of the ethical duties violated in light of any aggravating or mitigating circumstances." *Attorney Grievance v. Paul*, 423 Md. 268, 284, 31 A.3d 512, 522 (2011). For guidance, we often rely on the factors included in Standards of the American Bar Association Standards for Imposing Lawyer Sanctions. With regard to mitigation, we consider:

> Absence of a prior disciplinary record; absence of a dishonest or selfish motive; personal or emotional problems; timely good faith efforts to make restitution or to rectify consequences of misconduct; full and free disclosure to disciplinary board or cooperative attitude toward proceedings; inexperience in the practice of law; character or reputation; physical or mental disability or impairment; delay in disciplinary proceedings; interim rehabilitation; imposition of

other penalties or sanctions; remorse; and finally, remoteness of prior offenses.

*Attorney Grievance v. Brown*, 426 Md. 298, 326, 44 A.3d 344, 361 (2012), quoting *Paul*, 423 Md. at 285–86, 31 A.3d at 523 (quoting Section 9.32 of the ABA Standards for Imposing Lawyer Sanctions (1992)). Judge Stansfield found, with respect to mitigation, that there was "no evidence that any prior disciplinary action" had been taken against Penn, that there was "no evidence to show that the Respondent failed to cooperate with Bar Counsel's investigation," that there was "no evidence to conclude, other than the facts of this case, that the Respondent was not of good character and reputation," and that Penn "did appear to be remorseful for his actions."

[11] With respect to aggravating factors, we look to Standard 9.22 of the American Bar Association Standards for Imposing Lawyer Sanctions, which provides:

(a) prior disciplinary offenses;

(b) dishonest or selfish motive;

(c) a pattern of misconduct;

(d) multiple offenses;

(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(g) refusal to acknowledge wrongful nature of conduct;

(h) vulnerability of victim;

(i) substantial experience in the practice of law;

(j) indifference to making restitution.

*Attorney Grievance v. Bleecker*, 414 Md. 147, 176–77, 994 A.2d 928, 945–46 (2010).

Factor (b), "dishonest or selfish motive," is implicated. Judge Stansfield found that Penn "may not have received personal payments from B & K, he still had an ownership interest in this entity and acted to promote that interest through the payment scheme he devised." *See Attorney Grievance v. Lawson*, 428 Md. 102, 118, 50 A.3d 1196, 1205 (2012)

(per curiam) (concluding that factor (b) is implicated because the attorney "was clearly motivated by a desire to obtain fees to which he was not entitled").

Factor (c), a "pattern of misconduct," is also implicated. An attorney can engage in a pattern of misconduct by committing a number of acts in order to achieve a common goal. *Attorney Grievance v. Coppola*, 419 Md. 370, 406, 19 A.3d 431, 452–53 (2011). Penn authorized multiple payments from his employer to his firm without approval from his superiors, in violation of his obligations as an employee, and assigned assets from more than one of Old Republic's clients to his own firm for no consideration, all to promote his interest in Bennett & Kuhn. These multiple instances of misconduct, all aimed at the same goal of generating additional fees for his side business, constitute a pattern of misconduct.

Finally, factor (d), "multiple offenses," is implicated, because Penn violated Rules 8.4(c) and (d), in addition to Rule 8.4(a). *Bleecker*, 414 Md. at 177–78, 994 A.2d at 946 (concluding aggravating factor (d) is implicated as a result of numerous violations of the Rules).

Having set forth the relevant mitigating and aggravating factors, we now turn to determining the appropriate sanction. We have said that, when an attorney engages in dishonest, fraudulent, or deceitful conduct in violation of Rule 8.4(c), we generally order disbarment and we do not discuss degrees of dishonesty. *Attorney Grievance v. Vanderlinde*, 364 Md. 376, 418, 773 A.2d 463, 488 (2001). We explained that disbarment is warranted where a lawyer acts dishonestly because dishonest conduct is "beyond excuse":

> Unlike matters relating to competency, diligence and the like, intentional dishonest conduct is closely entwined with the most important matters of basic character to such a degree as to make intentional dishonest conduct by a lawyer almost beyond excuse. Honesty and dishonesty are, or are not, present in an attorney's character.

*Id.*

In the present case, Judge Stansfield specifically found that Penn had committed "intentional, willful, and deliberate con-

duct" involving dishonesty that violated the Maryland Lawyers' Rules of Professional Conduct. Penn attempts to disclaim any intentional dishonesty by noting that he "never made any affirmative misrepresentations.... Instead, Respondent's duplicity consisted of failing to disclose and taking steps to avoid discovery of his self-dealing transactions." This argument, however, misses the target, because our concern in *Vanderlinde* and its progeny is not whether the dishonest conduct consists of affirmative misrepresentations or intentional omissions, but, rather, whether the dishonest conduct was intentional. *Vanderlinde*, 364 Md. at 418, 773 A.2d at 488 ("Disbarment ordinarily should be the sanction for *intentional dishonest conduct*." (emphasis added)). Given Penn's intentional, dishonest misconduct, we agree with Bar Counsel that disbarment is the appropriate sanction.

In recommending a reprimand, Penn attempts to analogize this case to two of our decisions, among others, in which we imposed a sanction less than disbarment. In the first case, *Attorney Grievance v. Floyd*, 400 Md. 236, 929 A.2d 61 (2007), the attorney, Floyd, had applied to work for the Federal Trade Commission, and when her new employer presented an opportunity to increase her starting salary if she submitted a competing offer, Floyd proffered a letter from her former employer. Floyd did not disclose to the FTC that her former employer was her husband—an omission we determined to be violative of Rule 8.4(c). *Floyd*, however, involved only one instance of misconduct, not a pattern of conduct that violated multiple Rules, and the Federal Trade Commission did not consider Floyd's conduct to be dispositive, as it took no action to discipline her once Floyd's transgression was uncovered. These critical distinctions render *Floyd* of little value in determining the sanction in the instant case.

Penn also cites our decision in *Attorney Grievance v. Potter*, 380 Md. 128, 844 A.2d 367 (2004), in which the attorney, Potter, had taken client files and deleted files on his employer's computer when he left the firm. In imposing a suspension of ninety-days as his sanction, we "accept[ed] the hearing judge's determination that respondent's underlying motive

was 'to represent competently the clients, not to be dishonest or deceitful.'" *Id.* at 163, 844 A.2d at 387–88. Clearly, Penn's dishonesty distinguishes his acts from Potter's.

We dispose of Penn's final argument, that "the prejudicial delay in this case should be treated as a highly compelling mitigation factor," by reiterating that we agree with Judge Stansfield's finding that the delay in the proceedings in this case did not negate Penn's misconduct. Accordingly, we disbar Brien Michael Penn.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST BRIEN MICHAEL PENN.**